IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HAWK WARREN PLATERO,

    Plaintiff,

v.                                                                                                                                            CV 17-1037 JHR

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Hawk Warren Platero's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum, [Doc. 18], filed March 9, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 4, 10, 11]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"),[1] the Court denies Mr. Platero's Motion for the reasons set forth below.

**I)      INTRODUCTION**

This Court's institutional role is to ensure that the Commissioner's decision to deny Social Security benefits is supported by the law and substantial evidence. In this case, Mr. Platero argues that the ALJ assigned to his claim failed to weigh the medical opinions of two of his treating physicians. Mr. Platero also argues that the ALJ's RFC finding that he is able to perform jobs with

---

[1] Documents 15 and 15-1 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

up to an SVP of 3 is unsupported by substantial evidence. For these reasons, Mr. Platero argues that his case must be remanded to the Administration for further proceedings.

The Court is not convinced that the ALJ erred. First, Mr. Platero has failed to demonstrate that the two "opinions" at issue are truly "medical opinions" as defined by the regulations. This is important, as the ALJ is not required to weigh records that are not "medical opinions." Second, even assuming *arguendo* that the two "opinions" at issue should have been weighed, Mr. Platero has failed to demonstrate how they are inconsistent with his RFC. This renders any error by the ALJ in failing to weigh the opinions harmless. Finally, Mr. Platero has failed to demonstrate that he is unable to perform jobs with an SVP of 3 or below, and the Court finds that the ALJ's determination that he can perform such jobs is supported by substantial evidence. For these reasons, the Court must affirm the ALJ's decision denying benefits.

**II) BACKGROUND**

Mr. Platero filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on April 9, 2014, with a protective filing date of March 7, 2014. *AR* at 160-164. He initially alleged a disability onset date of January 31, 2014, the day he stopped working, due to "Bipolar and OCD," but later amended his alleged disability onset date to April 9, 2014, on the advice of his attorney. *AR* at 180. The Administration denied Mr. Platero's claim initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 84-120.

ALJ James Linehan held an evidentiary hearing on October 13, 2016. *AR* at 38-79. On November 8, 2016, the ALJ issued an unfavorable decision, finding that Mr. Platero has not been under a disability from his alleged onset date through the date of his decision. *AR* at 17-37. In response, Mr. Platero filed a "Request for Review of Hearing Decision/Order" on January 10,

2017. *AR* at 15-16. After reviewing his case, the Appeals Council denied Mr. Platero's request for review on August 15, 2017. *AR* at 1-6. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Platero has not engaged in substantial gainful activity since his amended alleged onset date. *AR* at 22. At Step Two, he determined that Mr. Platero has the severe impairments of "affective and anxiety disorders[.]" *AR* at 22. At Step Three, the ALJ concluded that Mr. Platero's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 23-24. Mr. Platero does not challenge these findings on appeal.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). "RFC is an administrative assessment of the

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Platero retains the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He would have nonexertional limitations in that he would be limited to work that is of SVP level 3 or less as defined in the *Dictionary of Occupational Titles*. He would have the ability to understand, remember, and carry out detailed written or oral instructions and to set realistic goals and plans independently of others. He would have the ability to interact appropriately with supervisors, co-workers and occasionally the public.

*AR* at 24.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Mr. Platero can perform his past relevant work as a janitor. *AR* at 31. Moreover, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Platero can perform despite his limitations. *AR* at 32. Specifically, the ALJ determined that Mr. Platero retains the functional capacity to work as a laundry worker, industrial sweeper-cleaner, and linen-room attendant despite his impairments. *AR* at 32. Accordingly, the ALJ determined that Mr. Platero is not disabled as defined in the Social Security Act and denied benefits. *AR* at 33.

**III) LEGAL STANDARDS**

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d

4

569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Racette v. Berryhill*, 734 F. App'x 592, 595 (10th Cir. 2018) (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court reviews the record as a whole, does not reweigh the evidence, and cannot substitute its judgment for that of the agency. *White v. Berryhill*, 704 F. App'x 774, 776 (10th Cir. 2017) (citing *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)). Moreover, "merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting [my] review, [I] should, indeed must, exercise common sense." *Keyes-Zachary*, 695 F.3d at 1166.

IV) **ANALYSIS**

Mr. Platero argues that "[t]he ALJ erred by failing to evaluate properly the medical opinions of treating sources Julia Kennedy, Psy.D., and Roger T. Pray, Ed.D., Ph.D.," and "erred by failing to apply properly the requirements of SSR 96-8p." [Doc. 18, pp. 5, 9]. The Court disagrees.

**A) The ALJ was not required to weigh the "opinions" of Drs. Kennedy and Pray; however, assuming *arguendo* that he was, the failure to weigh is harmless in this case.**

There is no dispute that Drs. Kennedy and Pray treated Mr. Platero for his mental health conditions. Thus, to the extent that they offered "medical opinions" as to his work-related functioning, the ALJ was required to weigh those opinions. *See Keyes-Zachary*, 695 F.3d at 1161 (citations omitted) ("It is the ALJ's duty to give consideration to all the medical opinions in the record…. He must also discuss the weight he assigns to such opinions."). And, because Drs.

5

Kennedy and Pray qualify as "treating sources" under the regulations, the Commissioner generally gives more weight to their opinions. *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

However, "medical opinion" is a term of art. *See, e.g.*, *Sierocki v. Berryhill*, CIV 17-0779, 2018 WL 4207304 (W.D. Penn. 2018) (explaining the difference between "objective medical findings" and "medical opinions"). It does not encompass all parts of a medical record, but merely *opinions*, that is, "statements … that reflect *judgments* about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03P, 2006 WL 2329939, at *2 (citing 20 CFR 40 4.1527(a)(2) and 416.927(a)(2)) (emphasis added); *see Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06–03p, 2006 WL 2329939, at *5). As such, records which document a claimant's complaints and chronicle his treatment, but do not contain opinions concerning the claimant's abilities or work-related limitations, do not have to be weighed. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) ("Dr. Gietzen's brief statement on the medical form was not a true medical opinion. It did not contain Dr. Gietzen's judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform."); *see also McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) ("The treatment notes cited by McDonald do not qualify as medical opinions…. these notes do not indicate any prognoses, nor do they provide opinions as to what McDonald could still do

despite her impairments or the nature of her mental restrictions."); *Welch v. Colvin*, 566 F. App'x 691, 693-4 (10th Cir. 2014) ("[A]s the Commissioner points out, none of the physicians Ms. Welch identifies provided medical opinions about her that, given her impairments, the ALJ was required to weigh. Rather, each physician simply diagnosed her impairments and in some cases recommended treatment for them."); *Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by Dr. DePaula and there were no medical opinions regarding Ms. Duncan's work-related functional limitations, there was no opinion on such matters by Dr. DePaula for the ALJ to weigh."); *Carr v. Commissioner, SSA*, 734 F. App'x 606, 609-10 (10th Cir. 2018) ("Ms. Lee's report also contained several statements relaying how Ms. Carr felt angry and helpless about her situation. But these statements were not 'opinions….'"). This is not to say that the ALJ can ignore such evidence; to the contrary, the ALJ must consider the evidence as a whole, including objective findings in medical records, when formulating a claimant's RFC. *See* 20 C.F.R. § 416.945(a)(3). But, the ALJ does not have to "weigh" such evidence. With these standards in mind, the Court turns to the two "opinions" that Mr. Platero argues should have been weighed in case.

### *i)* *Dr. Kennedy*

Dr. Kennedy's "opinions" at issue here come in the form of a letter entitled "Request for Accommodations," which she authored on September 28, 2016. *See AR* at 537-8. The letter begins by explaining that Mr. Platero asked Dr. Kennedy to "provide a letter that he could present to his Academic Institution regarding suggested accommodations given his mental health diagnosis." *AR* at 537. After recounting Mr. Platero's diagnoses, Dr. Kennedy explains that his "goal is to move forward with his education without a need for accommodations . . . However, it is likely that at some point he may need to request certain accommodations to remain successful." *AR* at 537. Dr.

7

Kennedy then lists certain "accommodations" that she believes would assist Mr. Platero in completing his education. *AR* at 537. For example, Dr. Kennedy states that Mr. Platero "has a good plan to avoid tardiness, however he may at times have difficulty getting to his classes during times of depression or when he feels overwhelmed." *AR* at 537. Dr. Kennedy also discussed Mr. Platero's potential to feel overwhelmed, especially during "an unexpected exacerbation of symptoms," and asked that "when/if this is the case he be allowed additional time to complete coursework." *AR* at 537. Dr. Kennedy also noted that Mr. Platero has had issues with attendance in the past, although she didn't "expect this to be an issue in his current program at this time." *AR* at 537. She did, however, ask to be included should Mr. Platero start having difficulties. *AR* at 537. Finally, Dr. Kennedy stated that "Mr. Platero may also need frequent use of the restroom due to medical issues and he may miss some class time because of this. During times of stress this is likely to increase." *AR* at 538. Dr. Kennedy concluded by stating that:

> Mr. Platero is an advanced thinker with significant cognitive capacity, above average to gifted. My hope is that he is given every opportunity to succeed in this Academic Program, a program that he is totally committed to. He is a pleasure to work with and is determined to break stereotypes and meet challenges that are presented to him.

*AR* at 538.

Mr. Platero admits that "[i]n his decision, the ALJ discussed Mr. Platero's treatment with Dr. Kennedy and her letter regarding accommodations." [Doc. 18, p. 6]. However, Mr. Platero argues that the ALJ erred by failing to weigh Dr. Kennedy's opinion. [*Id.*]. The Court is not persuaded.

Dr. Kennedy's Request for Accommodations is not a "medical opinion" as defined by the regulations because it does not constitute "judgments about the nature and severity of [Mr. Platero's] impairment(s), including symptoms, diagnosis and prognosis, what [he] can still do

8

despite the impairment(s), and physical and mental restrictions." 20 C.F.R. § 416.927(a)(2). In other words, Dr. Kennedy's letter is not a "medical opinion" because it did not opine as to what Mr. Platero could still do despite his impairments, nor did she assign him any specific work-related restrictions. In fact, the only specific accommodations suggested by Dr. Kennedy relate to Mr. Platero's ability to adjust to an academic setting. Therefore, because Dr. Kennedy did not exercise her professional judgment to opine specifically as to the limitations Mr. Platero would have in adapting to a competitive work environment, she did not clearly provide an opinion regarding his mental RFC that the ALJ needed to assess as such. *See Sierocki*, 2018 WL 4207304, at *1 (applying this same reasoning). Moreover, to the extent that she did place restrictions on Mr. Platero's work-related functioning, those restrictions were neither concrete nor definite. Rather, Dr. Kennedy's accommodations were qualified.

However, even assuming for the sake of argument that the ALJ was required to weigh Dr. Kennedy's opinions, the Court finds that any failure to weigh was harmless in this case. "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (citing *Keyes-Zachary*, 695 F.3d at 1162). Here, Mr. Platero has failed to explain exactly which functional limitations in Dr. Kennedy's "opinions" that should have been included in his RFC, but were not. [*See* Doc. 18, pp. 5-7; Doc. 21, pp. 1-2]. Thus, he has failed to demonstrate any prejudice from the ALJ's failure to expressly weigh the opinion. *See Sierocki*, 2018 WL 4207304, at *1. Mr. Platero vaguely argues that the ALJ's failure to properly evaluate Dr. Kennedy's opinion was "harmful and significant" because the Vocational Expert testified at the hearing that if an individual were to miss one day of a month of work, or be off task 15% of the day, that they would not be able to maintain competitive employment. [*See* Doc. 18, p.

9

9 (citing *AR* at 78); Doc. 21, p. 3]. However, Dr. Kennedy never opined that Mr. Platero would regularly suffer from these limitations, and the ALJ was not required to include them in the RFC.

    *ii)*    **Dr. Pray**

The second "opinion" that Mr. Platero argues should have been weighed is that of Dr. Pray, who authored a Psychological Assessment of Mr. Platero's mental health on July 9, 2014. *See AR* at 401-406. Dr. Pray's assessment begins by stating that Mr. Platero "is a 20-year-old Native American male who first came to this clinic on June 17, 2014 for the purposes of re-evaluating his diagnoses in view of mood swings and to obtain medication management." *AR* at 401. After detailing Mr. Platero's current and past medications, Dr. Pray noted that Mr. Platero "feels most stable on the current regimen." *AR* at 401. As Mr. Platero points out, [Doc. 18, p. 7],[3] Dr. Pray stated the following in the "Background Information" section of his Assessment:

> Mr. Platero definitely experiences the manic and depressive symptoms of Bipolar I Disorder. Depressive symptoms include sadness, lack of interest in previously enjoyable activities, excessive sleep, diminished appetite, guilt, fatigue, and reduced energy. Manic symptoms include a reduced need for sleep, more activity and exercise that usual, inflated self-esteem and concomitant feelings of invincibility, increased socialization and being more friendly and talkative, and heightened impulsivity. The depressive symptoms are chronic and seem to take the form of dysthymia superimposed on major depressive episodes – "double depression." Manic episodes appear to last a couple weeks.
> …
> Mr. Platero also suffers from OCD. He acknowledged that he must wash himself in the shower in a particular order. If he gets out of order, he has to start over. He said that he had to take a quick shower prior to our meeting, and felt uncomfortable. He is driven to wash his hands many times per day. He also engages in some counting behaviors such that things have to be in multiples of three if he is to feel comfortable. He added that he must keep his car meticulously clean.

*AR* at 402. As Mr. Platero also points out, [Doc. 18, p. 8], in the Mental Status Evaluation portion of the Assessment, Dr. Pray noted that "the testing and interview took far longer than normal. [Mr.

---
[3] For reasons that will be discussed, the Court does not believe that this portion of Dr. Pray's assessment constitutes a "medical opinion" that the ALJ was required to weigh. Nonetheless, Mr. Platero builds his argument around the following text, [Doc. 18, pp. 7-8], and so the Court restates it in full.

10

Platero] was extremely meticulous when filling in the truth-false circles on the MMPI. He was also very deliberate in choosing his answers." *AR* at 403. Finally, Mr. Platero notes that, in the Results of the Evaluation section, [Doc. 18, p. 8], Dr. Pray stated that:

> [h]is profile indicates that he is quite disturbed at this time. People with similar profiles tend to be chronically maladjusted as indicated by periods of intense anxiety and panic. In addition, they experience periods of confusion and disorganization. He is excessively ideational and is often preoccupied with unusual thoughts and feelings of inadequacy. Sometimes, things seem unreal. On the objective personality testing, he endorsed considerable anxiety with somatic symptoms such as stomach distress, headaches and shortness of breath. Similarly, he endorsed many depressive symptoms.

*AR* at 404. Dr. Pray concluded his Assessment by listing Mr. Platero's diagnoses and providing a Summary and Recommendation. *AR* at 405.

Mr. Platero again admits that the ALJ discussed Dr. Pray's Assessment in his decision; however, he argues that the ALJ "failed to evaluate the weight he attributed to Dr. Pray's medical opinion[.]" [Doc. 18, p. 9]. As with Dr. Kennedy, the Court is not persuaded, for two reasons.

First, much of Dr. Pray's Assessment as quoted by Mr. Platero is a narrative summary of statements by Mr. Platero. These portions of the report do not qualify as medical opinions that had to be weighed by the ALJ. *Keyes-Zachary*, 695 F.3d at 1164; *see Lepperd v. Berryhill*, CIV 26-2501, 2018 WL 151954, at *8-9 (M.D. Penn. 2018) ("Dr. Tsou's mental health examinations do not comport with the regulatory definition of a 'medical opinion', and are instead merely a description of how Mr. Lepperd presented to Dr. Tsou on a particular day."). Additionally, while they might technically be thought of as "opinions" in the traditional sense of the word, an ALJ commits no harmful error in refusing to weigh observations by Dr. Pray that do not offer an assessment of the effect of Mr. Platero's mental limitations on his ability to work. *See id.* ("None of these observations … offers an assessment of the effect of Ms. Keyes-Zachary's mental

limitations on her ability to work…. The ALJ's failure to assign a specific weight to Mr. Blasdel's observations therefore do not represent harmful error.").

Second, with the possible exception of the length of time it took Mr. Platero to complete testing, to the extent that the Assessment contained opinions as to Mr. Platero's functioning, they were not favorable to him for the purposes of supporting his claim. For example, as part of his Mental Status Evaluation Dr. Pray stated that:

> Mr. Platero was alert and attentive during the assessment process and showed no indications of excessive distractibility. He was appropriately dressed and groomed and eye contact was appropriate. There were no observable abnormalities of gait, posture, or deportment. His speech was normal in terms of rate, volume, prosody, and fluency. This vocabulary and grammar suggested intellectual functioning at the normal range or higher.
>
> Throughout the process, his attitude was open and cooperative. He is a quiet person and his affect was somewhat blunted. Overall he was quite pleasant and extremely honest. His memory was grossly intact in terms of immediate and remote recall of events and factual information. Thought processes were intact and organized. There were no indications of hallucinations, delusions, paranoia, or current suicidal/homicidal thinking.

*AR* at 403. However, Mr. Platero ignores this portion of the Assessment, which is much more descriptive of his abilities and limitations than the sections he quotes. Even when read in the worst possible light, Dr. Pray's Assessment does not support the limitations Mr. Platero argues should have been included in his RFC.

As with Dr. Kennedy, Mr. Platero points only to the Vocational Expert's testimony that an individual cannot miss one day of work a month or be off task for 15% of the day when maintaining competitive employment. [*See* Doc. 18, p. 9]. However, Dr. Pray, like Dr. Kennedy, did not ascribe such limitations to Mr. Platero. Therefore, the Court discerns no harmful error from the ALJ's failure to weigh Dr. Pray's Assessment. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ( "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine

a claimant's RFC, the need for express analysis is weakened."); *see also Nelson v. Commissioner of Social Security*, CIV 17-0626, 2018 WL 2976068, at *4 (M.D. Fla. 2018) (finding harmless error where "Claimant has pointed to nothing in the treatment records from CFMH, such as observations concerning the severity of Claimant's symptoms or opinions concerning Claimant's functional limitations, which demonstrate that Claimant's impairments caused functional limitations greater than those contained in the ALJ's RFC determination.").

    **B) The ALJ properly applied SSR 96-8p when formulating Mr. Platero's RFC, and the Court finds the RFC to be supported by substantial evidence.**

Mr. Platero's final argument is multi-faceted. Initially, he accuses the ALJ of failing to comply with SSR 96-8p because the RFC finding limiting him to jobs with an SVP of 3 or less is unsupported by substantial evidence. [*See* Doc. 18, pp. 9-11]. More specifically, Mr. Platero argues that the ALJ "failed to provide a connection between the mental status examination findings and the conclusion that Mr. Platero could perform SVP 3 level work." [*Id.*, p. 11]. Then, citing the same SSR, Mr. Platero argues that "[t]he ALJ failed to give careful consideration to symptoms and Mr. Platero's descriptions, which show that he has more severe limitations than shown on mental status examinations." [*Id.*]. Finally, Mr. Platero quotes extensively from SSR 85-15 and argues that the ALJ failed to consider his response to stress and his ability to work. [*Id.*, p. 12]. Having carefully considered these arguments and the authorities that Mr. Platero cites, the Court discerns no reversible error.

Mr. Platero's argument is focused on the ALJ's RFC finding that "[h]e would have nonexertional limitations in that he would be limited to work that is of SVP level 3 or less as defined in the *Dictionary of Occupational Titles*." [*See* Doc. 18, p. 9 (quoting *AR* at 24)]. The ALJ explained how he reached this finding near the end of his decision, after he assessed the medical opinions from the State Agency psychologists in the file:

13

> I give only partial weight to these opinions. I find that the claimant's mental status examination findings show that he can perform, at most, work that is of SVP level 3 or less as defined in the *Dictionary of Occupational Titles* and would have the ability to understand, remember, and carry out detailed written or oral instructions.

*AR* at 31. In other words, the ALJ rejected the State Agency psychologists' opinions that Mr. Platero has no limitations in the ability to understand, attend, and concentrate, instead tempering their opinions in Mr. Platero's favor. *Id.*

The Court sees nothing inappropriate in the ALJ's decision. As the Tenth Circuit has stated, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). This is because "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Therefore, an ALJ does not commit reversible error by electing to temper an adverse medical opinion in the claimant's favor. *Id.*

That is precisely what the ALJ did in this case. The ALJ determined that Mr. Platero is *more* limited than did the State Agency psychologists. Mr. Platero ignores this fact, instead arguing that the ALJ "failed to provide a connection between the mental status examination findings and the conclusion that Mr. Platero could perform SVP 3 level work." [Doc. 18, p. 11]. But the ALJ was not required to provide such a connection, so long as his RFC finding was supported by substantial evidence.

Mr. Platero's argument to the contrary is a hyper-technical and belabored reading of pertinent regulations and SSRs. SSR 96-8p was intended "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under Titles II and XVI of the Social Security Act." 1996 WL 374184 at *1. Mr. Platero quotes this ruling for the proposition

that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." [Doc. 18, p. 10 (quoting SSR 96-8p, 1996 WL 374184 at *6)]. In so quoting, Mr. Platero appears to argue that he is incapable of carrying out these work-related mental abilities. [*See id.,* pp. 9-10]. But the ALJ found to the contrary, concluding that Mr. Platero is capable of performing both unskilled and semi-skilled work, up to a SVP of 3. *AR* at 31. Mr. Platero cites nothing to the contrary and the Court has found nothing in the Record that overwhelms the ALJ's conclusion.

In fact, Mr. Platero's educational background (high school and some college) belies his position. "SVP" stands for "Specific Vocational Preparation." *See Dictionary of Occupational Titles*, 1991 WL 688702 (4th Ed. 1991). SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* An SVP of 1 requires a short demonstration only; an SVP of 2 is anything beyond a short demonstration up to and including 1 month; and, an SVP of 3 is anything over 1 month up to and including 3 months. *Id.* "[U]nskilled work corresponds to an SVP of 1-2 [and] semi-skilled work corresponds to an SVP of 3-4[.]" SSR 00-4p, 2000 WL 1898704 at *3. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 416.968(b). The administration generally believes that someone with a high school education can do semi-skilled through skilled work. 20 C.F.R. § 416.964(b)(4). And, here, the ALJ determined that Mr. Platero can still perform work of a SVP 3 *or less*. In other words,

15

the Court finds no reversible error in the ALJ's decision to restrict Mr. Platero's RFC to work that is arguably of a lesser skill level than he is able to perform.

Mr. Platero also quotes SSR 96-8p for the proposition that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." [Doc. 18, p. 10 (quoting SSR 96-8p, 1996 WL 374184 at *7)]. Mr. Platero does not, however, discuss how the ALJ's RFC assessment, which takes up almost eight single-spaced pages, failed to conform to this standard.

Finally, the Court finds Mr. Platero's reliance on SSR 85-15 to be misplaced. SSR 85-15 provides helpful guidance concerning the evaluation of nonexertional impairments. *See* 1985 WL 56857. It also contains a section, which Mr. Platero almost quotes in full, that discusses the effect of stress on those with mental illness. *See id.* at *5-*6; [*see* Doc. 18, p. 12]. The most important sentence in this section states that "[a]ny impairment-related limitations created by an individual's response to demands of work … must be reflected in the RFC assessment." SSR 85-15, 1985 WL 56857 at *6. This, however, is where Mr. Platero's argument ends. In other words, he does not cite to any specific impairment-related limitations caused by stress that the ALJ should have incorporated into the RFC. The Court will not craft arguments for Mr. Platero. Moreover, SSR 85-15 recognizes that "[g]ood mental health services and care may enable chronic patients to function adequately in the community.…" *Id.* This is most likely why the SSR was not "intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis." *Id.* The Court is satisfied that the ALJ in this case thoroughly considered Mr. Platero's impairment-related restrictions. Therefore, no reversible error has been demonstrated.

## V) CONCLUSION

Mr. Platero has failed to show any prejudice resulting from the ALJ's failure to weigh the "opinions" of his treating doctors. Mr. Platero has also failed to demonstrate that the ALJ improperly applied the regulations or SSRs 96-8p or 85-15 when formulating his RFC.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Hawk Warren Platero's Motion to Reverse and Remand [Doc. 18] is DENIED and the decision of the Commissioner is AFFIRMED.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent